REVISED DECEMBER 5, 2008

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 2, 2008

Charles R. Fulbruge III
Clerk

No. 07-60652

NEIL PAUL; MARY DOBSA

Plaintiff-Appellant

v.

LANDSAFE FLOOD DETERMINATION INC

Defendant-Appellee

Appeal from the United States
Southern District of Mississippi, Gulfport Division

Before BENAVIDES, SOUTHWICK, and HAYNES, Circuit Judges.

Leslie H. Southwick, Circuit Judge:

After receiving an erroneous flood zone determination, Mary Dobsa brought claims of negligence and negligent misrepresentation against Landsafe Flood Determination, Inc. The district court granted summary judgment to the Defendant. For the reasons that will be explained, we reverse and remand.

## I. BACKGROUND

Mary Dobsa owned a home in Biloxi, Mississippi, in which she and Neil Paul resided. Countrywide Home Loans, Inc. was the mortgage lender on the home. Prior to financing and in accordance with the National Flood Insurance

Act, Countrywide selected Landsafe to determine whether Dobsa's home was located in a federal flood zone. Dobsa paid for Landsafe's services.

Landsafe indicated that the home was not situated in a flood-hazard area. Accordingly, Countrywide provided financing without requiring Dobsa to obtain flood insurance through the National Flood Insurance Program. Unfortunately, Hurricane Katrina struck on August 29, 2005, and caused substantial damage to this residence for which no flood insurance coverage existed. It was then learned that the home was actually located in a flood-hazard area.

Dobsa and Paul[1] (to whom we will refer as "Dobsa") subsequently filed a diversity action in the district court, alleging negligence and negligent misrepresentation against Landsafe under Mississippi law.[2] They also sought punitive damages. Following discovery, the district court granted Landsafe's motion for summary judgment. This appeal was timely brought.

## II. DISCUSSION

### A. Standard of Review

We review the district court's grant of summary judgment de novo. XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd., 513 F.3d 146, 149 (5th Cir. 2008). Summary judgment is appropriate only when the record reflects "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, "we view facts and inferences in the light most favorable to the nonmoving party." Mahaffey v. Gen. Sec. Ins. Co.,

---

[1] Paul is a named plaintiff and appellant. Landsafe challenged Paul's standing, arguing that he was neither an owner of the home nor a party to the mortgage. The district court did not reach this issue prior to granting summary judgment; it has not been briefed on appeal. We leave the issue of Paul's standing for the remand.

[2] Countrywide was named as a Rule 19 party in interest in the district court, but the court dismissed Countrywide with prejudice after summary judgment was entered in favor of Landsafe. See Fed. R. Civ. P. 19.

543 F.3d 738, 740 (5th Cir. 2008). We must reverse summary judgment if it is determined that a reasonable jury could return a verdict in favor of the non-moving litigant. See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 399 (5th Cir. 2008).

B.    The National Flood Insurance Act

The National Flood Insurance Act was enacted to make homeowner insurance affordable in designated flood-prone areas. 42 U.S.C. § 4001. The Federal Emergency Management Agency is required to identify flood-prone areas, publish flood-risk-zone data, and revise that data as needed. Id. § 4101(a). Any federally regulated lender making a loan secured by improved real estate located in a designated flood-risk zone must as a condition of making the loan require the purchase of insurance through the National Flood Insurance Program. Id. § 4012a(b)(1). Banks and lending institutions are responsible for determining if a piece of property falls within a designated flood-risk zone; the institutions may delegate the determination to third parties provided "the accuracy of the information" is guaranteed. Id. § 4104b(d). There is no liability for a lender who relies on a previous flood-zone determination at the time of "increasing, extending, renewing, or purchasing a loan . . . ." Id. § 4104b(e). It is unclear how that particular immunity applies to the making of the initial loan. Cf. Id. § 4104b(d) (a lender who "makes, increases, extends, or renews" a relevant loan may rely on a third party to determine flood-zone status).

Several judicial precedents have settled some of the liability issues that arise when a determination is erroneously made that property is not in a flood-risk zone, insurance was therefore not obtained, and damage from flooding thereafter occurs. We know from these precedents that the Act does not create an implied private right of action for borrowers when a determination is erroneously made that property is outside a flood zone. Till v. Unifirst Fed. Sav. & Loan Ass'n, 653 F.2d 152, 161 (5th Cir. 1981). Two decades later, we observed

that every "single federal court to consider whether a private right of action arises under section 4012a has concluded" that it does not. Wentwood Woodside I, L.P. v. GMAC Commercial Mortgage Corp., 419 F.3d 310, 323 (5th Cir. 2005).

We also find that a panel of this court determined, under Texas law, that the federal statutory requirements do not create a standard of conduct, the breach of which would form the basis for a negligence per se suit against the lender. Id. at 321-23. A federal district court has similarly found that the Act does not create a standard for a state negligence per se suit under Mississippi law against a flood-zone determination company. Lusins v. First Am. Real Estate Solutions of Tex., L.P., No. 1:06-CV-646, 2007 WL 1745625 (S.D. Miss. June 14, 2007).[3] The negligence per se doctrine, as a species of state tort law, is something for each state to determine. Pending state court determinations, federal courts have to predict outcomes.

The Plaintiff here disavows reliance on the doctrine either of an implied cause of action under the Act or of negligence per se. We note these precedential guideposts on this Act and move to what the Plaintiff asserts in her effort to avoid these barriers. Dobsa maintains that her claim arises solely under Mississippi law. This court previously recognized that the lack of a private cause of action under the Act would not foreclose relief under state tort law, ironically making that decision in a Mississippi case. Till, 653 F.2d at 154. The case had been removed from state court based on federal question jurisdiction; we remanded so that the district court could return the suit to state court. Id. at 162. We find no published opinion reflecting what occurred after the state trial

---

[3] The district court relied on Lusins in granting summary judgment in this case. But unlike the plaintiff in Lusins, Dobsa did not plead negligence per se. Dobsa asserts that Mississippi common law independently identifies a duty and standard of care, outside the NFIA, that would permit recovery against Landsafe.

court regained jurisdiction. Unlike in Till, in this diversity suit we must address whether there are Mississippi remedies. We now turn to that issue.

C.    Mississippi Law

As noted, Dobsa eschews reliance on the doctrines we have just reviewed. Instead, she argues that a cause of action for the very negligence alleged in this suit has already been recognized in Mississippi. We examine that case closely since it is the foundation for the claim.

The Mississippi precedent arose in the context of a devastating flood in the state's capital city on Easter Sunday, 1979. McKinnon v. Batte, 485 So. 2d 295, 296 (Miss. 1986). Late in the year before the flood, McKinnon had hired a surveyor as required by his lender. The surveyor erroneously determined that the home McKinnon was buying was not in a flood-hazard area. Id. at 296-97. The surveyor as well as the agent who wrote the homeowner's insurance policy were defendants in the suit brought on the theory of negligence. There was evidence that the insurance agent had used a 1974 map to inform the plaintiff that he did not need to buy flood insurance, while the official map issued in 1975 indicated that the property was in a flood zone. Id. at 297. Whether such a reason also explained the surveyor's error is not stated in the opinion.

The National Flood Insurance Act required in 1979 – and still requires – a lender "to notify the purchaser . . . of such special flood hazards, in writing, a reasonable period in advance of the signing of the purchase agreement . . . ." Id. at 298 (quoting 42 U.S.C. § 4104a). No party in our case disputes that besides giving this notice to the buyer, a lender must also require flood insurance as a condition for making a loan that is secured by flood-zone property. See 42 U.S.C. § 4012a(b)(1). The point was disputed in McKinnon, though. A bank lawyer testified that when property was in a flood zone, the lender had to require the purchase of flood insurance. Id. at 299. The closing attorney, however, testified that when property was in a flood zone, he would just ask the lender and buyer

if either wanted flood insurance. Id. No issue for the court to resolve was raised in the appeal about whether insurance was optional. Id. at 296. A choice for buyers that appears to have been a premise for the court's analysis, though, was that they could purchase flood insurance even when the property was not in a flood zone. Id. at 297 (insurance agent asked why he had not "suggested" flood insurance be purchased, and it was because property was not in a flood zone). Even if that option was available in 1979, we do not know if it was an option available to Dobsa.

In McKinnon, a fact issue submitted to the jury was whether the plaintiff had relied on either the insurance agent or surveyor when he decided not to buy flood insurance. There was evidence that the buyer ignored the survey and relied on information from neighbors that the property had never flooded. Id. The jury reached a verdict in favor of the defendants. The Mississippi Supreme Court described the standard of care applicable to surveyors as being the "skillful[] discharge [of] their contractual obligation." Id. at 298. Duty, breach, and damages were clearly shown, but the claim failed based on lack of evidence of causation. Id. at 299. The buyer simply had not relied on the survey.

McKinnon is uncertain support for our Plaintiff. That case was tried as if flood insurance coverage might be a choice to be made by a buyer at the time of purchase. Liability would be assessed to professionals who provided negligent information about the flood hazard only if the buyer relied on the information when deciding not to buy the coverage. For our home buyer, flood insurance was not optional at least if the proper flood-area determination had been made. Another distinction is that McKinnon contracted directly with the surveyor who made the error. As we will discuss, we do not find that fact to be critical because Mississippi has rejected contractual privity as relevant to claims such as this. McKinnon is helpful but not the complete answer.

There are other Mississippi precedents which we find quite informative, but we acknowledge at this point that some of what we must decide has not yet been addressed in state court decisions. When a relevant state's precedents in a diversity case do not fully advise us on the law, we must make our best determination of what that state's highest court would decide. Howe v. Scottsdale Ins. Co., 204 F.3d 624, 627 (5th Cir. 2000). Our primary focus will be on the current landscape of Mississippi substantive law. See Audler v. CBC Innovis Inc., 519 F.3d 239, 248-54 (5th Cir. 2008).

Landsafe argues that Dobsa's negligence and negligent misrepresentation claims must fail because Mississippi law imposed no duty on Landsafe to provide Dobsa with a correct determination. In particular, Landsafe maintains that its only duty was to provide Countrywide with a determination for purposes of complying with the National Flood Insurance Act. To bolster this argument, Landsafe makes much of the fact that Countrywide, not Dobsa, selected Landsafe to perform the determination.

Landsafe's position is an implicit reliance on the absence of privity between it and Dobsa. The Mississippi Supreme Court addressed the relevance of that factor in a case in which the issue was identified as whether an "independent auditor [is] liable to a third party, who, though lacking privity, relies to his detriment on financial statements negligently prepared?" Touche Ross & Co. v. Commercial Union Ins. Co., 514 So. 2d 315, 318 (Miss. 1987). The court answered in the affirmative, providing the following rule and rationale:

> the Court finds that an independent auditor is liable to reasonably foreseeable users of the audit, who request and receive a financial statement from the audited entity for a proper business purpose, and who then detrimentally rely on the financial statement, suffering a loss, proximately caused by the auditor's negligence. Such a rule protects third parties, who request, receive and rely on a financial statement, while it also protects the auditor from an unlimited number of potential users, who may otherwise read the financial statement, once published.

7

Id. at 322-23.

The Mississippi Supreme Court later clarified this rule in a case involving duties of care in performing other kinds of professional services. Hosford v. McKissack, 589 So. 2d 108 (Miss. 1991). There, a real estate company hired a company to provide a termite inspection. Id. at 109. Later, the real estate company sold the home and notified the buyer that the pest control company's report stated that the home was free of termites. Id. After learning that the report was erroneous, the buyer sued the pest control company for negligent misrepresentation. Id. at 110. The trial court cited Touche Ross and dismissed the buyer's claims on summary judgment, reasoning that the buyer "lacked privity" and was "outside the circle of foreseeability." Id.

The Mississippi Supreme Court reversed. First, the court noted that Mississippi had eliminated the privity requirement by this statute:

> In all causes of action for personal injury or property damage or economic loss brought on account of negligence, strict liability or breach of warranty . . ., privity shall not be a requirement to maintain said action.

Miss. Code Ann. § 11-7-20. Second, the court arguably broadened the Touche Ross rule and held that while those who "request and receive an audit report or a termite inspection report may be within the ambit of the defendant's duty, it does not follow on principle that those who do not formally request the report of and from its maker are excluded." Hosford, 589 So. 2d at 111. The liability is "to reasonably foreseeable users," not just to those who request the work. Id.

Foreseeability is a rather broad term. Limits might one day be drawn by the state court. Importantly, the events in this case are not beyond Hosford's factual pattern but squarely within it. As with the Hosford pest control report, this flood-zone determination was made for a specific transaction. Just as a buyer of residential property would be interested in current damage from termites, a buyer would be interested in the potential of future damage from

flood. Though Dobsa did not retain Landsafe to examine the flood-zone data, privity is not an issue. The proper inquiry is whether it was reasonably foreseeable that Dobsa would receive and rely on Landsafe's report.

Landsafe argues for a narrower view of the group of persons to whom a duty is owed, citing a case from this court that applied Louisiana law. See Audler, 519 F.3d 239. In that case, a company similar to Landsafe made an erroneous determination about the flood zone; the borrower sued the determination company. Id. at 245. We concluded "that the Louisiana Supreme Court would find that Audler has not stated a claim for negligence or negligent misrepresentation . . . ." Id. at 253. We relied on a Louisiana precedent dealing with pest control reports that identified an important limitation imposed by Louisiana law. Id. at 251 (discussing Barrie v. V.P. Exterminators, Inc., 625 So. 2d 1007 (La. 1993)). In Barrie, the Louisiana court reversed summary judgment after finding that the pest control company's duty to provide an accurate termite inspection report extended to third persons for whose benefit and guidance the report was supplied. Barrie, 625 So. 2d at 1017. The Audler court found that "the key distinction between Barrie and the present case [is that] Audler is not a member of the limited group for whose benefit and guidance the special flood hazard determination was prepared." Audler, 519 F.3d at 251.

The Barrie requirement that a plaintiff must be a member of a limited, intended group is a requirement drawn from the Restatement. See RESTATEMENT (SECOND) OF TORTS § 552. The Restatement approach, which is employed in a majority of the states,[4] provides this:

---

[4] In First National Bank of Commerce v. Monoco Agency Inc., 911 F.2d 1053, 1060 (5th Cir. 1990), we noted that the Restatement "constitutes the majority position, with approximately nineteen jurisdictions aligned with section 552 for the negligent misrepresentation of commercial information." But since Monoco Agency, it appears that even more states have adopted the Restatement view. See Jay M. Feinman, Liability of Accountants for Negligent Auditing: Doctrine, Policy, and Ideology, 31 FLA. ST. U. L. REV. 17 (2003) (citing over thirty jurisdictions that employ the Restatement approach or its equivalent).

(1) One who, in the course of his business, profession or employment, or in any other transaction which he has a pecuniary interest, supplies false information for the guidance of others in their business transaction is subject to liability for pecuniary loss suffered by them by their justifiable reliance upon the information if he fails to exercise reasonable care or competence in obtaining or communicating information.

(2) . . . [T]he liability stated in Subsection (1) is limited to loss suffered
  (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
  (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Id. (emphasis added).

In Barrie, however, the Louisiana Supreme Court declined to adopt the Restatement approach expressly. The court stated that it would employ a "case by case application of the duty/risk analysis" instead. Barrie, 625 So. 2d at 1016. It is clear, though, that both Barrie and the Restatement focus on whether a plaintiff is a member of a limited, intended group for whom a report is prepared. A statement from a commentator discussing Barrie underscores this point:

[A]lmost immediately after making the broad statement that adopting one of the three common law approaches was unnecessary, the court somewhat illogically went on to analyze the factors in the Restatement section 552 duty approach to determine that the professional owes a duty to the third party, even in the absence of direct or indirect contact, when the third party is a member of the "limited group for whose benefit and guidance the report was contracted and supplied."

Comment, Dominick F. Impastato, III, Louisiana Revised Statute Section 37:91 - Removing Accountability from the Accounting Profession, 49 LOY. L. REV. 553, 570 (2003).

Mississippi's rule is more expansive. Together, Touche Ross and Hosford illustrate that a relevant inquiry for purposes of Mississippi law is whether Landsafe could have reasonably foreseen that Dobsa would rely on the flood determination – not whether Dobsa was a member of a limited group for whose benefit the determination was intended. The Mississippi Supreme Court in one case did say that Touche Ross constituted an express adoption of Section 552 of the Restatement (Second) of Torts. Strickland v. Rossini, 589 So. 2d 1268, 1277 (Miss. 1991). Later in the opinion, though, the court reiterated that its version of the "rule permits parties who are foreseeable recipients of a negligently prepared professional opinion and who detrimentally rely on that opinion in their business affairs to recover from the person offering the opinion." Id. Buyers such as Dobsa are foreseeable recipients – statutorily mandated recipients – of notice that a flood hazard is present, though not necessarily of the absence of one. 42 U.S.C. § 4104a(a)(1).

We once characterized Touche Ross as placing Mississippi in a category with a few states that employed a broad "foreseeability approach" for analyzing a defendant's duty of care in the performance of professional services. Monoco Agency Inc., 911 F.2d at 1058 n.9. We identified California,[5] New Jersey,[6] and Wisconsin[7] as Mississippi's counterparts. As our footnotes indicate, the first two states appear to have abandoned their exceptionalism. The broad and almost

---

[5] The California Court of Appeal, Fourth District, adopted the "foreseeability approach" in International Mortgage Co. v. John P. Butler Accountancy Corp., 177 Cal. App. 3d 806 (Ct. App. 1986). However, the California Supreme Court subsequently overruled that opinion, explaining that the "foreseeability approach" fails to consider a variety of important policy factors. See Bily v. Arthur Young & Co., 834 P. 2d 745, 766 n.15 (Cal. 1992).

[6] The New Jersey Supreme Court adopted the "foreseeability approach" in Rosenblum, Inc. v. Adler, 461 A.2d 138 (N.J. 1983). However, the state subsequently moved away from foreseeability by adopting a privity statute. See N.J. Stat. Ann. 2A:53A-25.

[7] The Wisconsin Supreme Court adopted the "foreseeability approach" in Citizens State Bank v. Timm, Schmidt & Co., 335 N.W.2d 361 (Wis. 1983).

unique Mississippi rule for negligent misrepresentation makes the analysis in Audler about Louisiana law inapplicable.

We conclude that issues arising in Mississippi from flood-zone determinations are similar to those in the termite inspection and auditor report precedents. Admittedly, reliance is a different issue when flood insurance is required and is not an option. We do not consider what reliance would mean in circumstances such as this. It is enough to hold that the erroneous flood-zone determination was the kind of professional opinion, developed in the course of a party's business and supplied for the guidance of others in a transaction, on which justifiable and detrimental reliance by a reasonably foreseeable person might be shown to have occurred.

Landsafe sought to limit its liability by placing a disclaimer on its flood-zone determination: "This flood determination is provided to the lender pursuant to the Flood Disaster Protection Act. It should not be used for any other purpose." The effect of the disclaimer is among the remaining issues. There are other questions. We hold today only that Landsafe did not demonstrate its entitlement to judgment under Mississippi law.

The judgment of the district court is REVERSED, and the cause is REMANDED for further proceedings.