#26119-a-DG

**2012 S.D. 37**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

HIGHMARK FEDERAL CREDIT
UNION,                                                     Plaintiff and Appellee,

    v.

RACHELLE L. HUNTER,                          Defendant and Appellant,
  and
CREDIT COLLECTIONS BUREAU          Defendant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JEFF W. DAVIS
Judge

* * * *

RODNEY C. LEFHOLZ
Rapid City, South Dakota                         Attorney for plaintiff
                and appellee.


JAMES P. HURLEY of
Bangs, McCullen, Butler,
  Foye & Simmons
Rapid City, South Dakota                          Attorneys for defendant
                and appellant.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 19, 2012

OPINION FILED **05/16/12**

GILBERTSON, Chief Justice

[¶1.]     Rachelle Hunter received a loan from Highmark Federal Credit Union to purchase a home and property.  A flood damaged the home a few years later.  There was no flood insurance.  Hunter argues Highmark was negligent in failing to warn her to purchase flood insurance and in failing to purchase the insurance at her expense.  Hunter appeals from the circuit court's grant of summary judgment.

## FACTS

[¶2.]     In 2005, Highmark made a loan to Hunter to purchase a manufactured home and lot in Hermosa, South Dakota.  Hunter signed a document titled "Standard Flood Hazard Determination" that indicated the property was in a 100-year flood area.  The document included a section titled "Notice to Borrower about Federal Flood Disaster Assistance."  Under that section, the following language provided in part:

> The Flood Disaster Protection Act of 1973, as amended, mandates federally insured or regulated lenders to require the purchase of flood insurance on all buildings being financed that are located in [Special Flood Hazard Areas] of communities participating in the [National Flood Insurance Program].  The flood insurance must be maintained for the term of the loan.  If you fail to purchase or renew flood insurance on the property, Federal law authorizes and requires us to purchase the flood insurance at your expense.

No flood insurance was purchased by either Hunter or Highmark.  In 2007, a flood damaged the home and the personal property inside.

[¶3.]     The Flood Disaster Protection Act of 1973 (FDPA), as amended, 42 U.S.C. §§ 4001-4129, and Code of Federal Regulations, 12 C.F.R. § 760, place certain requirements on federally regulated financial institutions.  Such institutions

cannot make a loan secured by improved real estate in an area designated as a special flood hazard unless the property is covered by flood insurance. Before the loan can be made, the borrower must obtain the insurance. If the borrower does not, the institution is authorized and required to obtain the flood insurance at the borrower's expense.

[¶4.]        After the flood, Highmark filed a foreclosure action against Hunter. Highmark demanded the balance of the loan plus interest. Hunter counterclaimed, alleging that Highmark did not inform her she needed to purchase flood insurance. She also argued Highmark was negligent in failing to purchase the required flood insurance and add the premium cost to her account. Hunter asserted that such failure was a breach of Highmark's statutory duty and was negligent as a matter of law.

[¶5.]        Highmark moved for summary judgment, contending that there were no genuine issues of material fact regarding its foreclosure complaint and it was entitled to judgment as a matter of law. As to Hunter's counterclaim, Highmark argued that it had no statutory or common-law duty to Hunter under the FDPA so Hunter's counterclaim should be dismissed. The circuit court denied the motion in October 2008. In 2009, the parties stipulated to foreclosure and a sheriff's sale of the property. Under the stipulation, Hunter's counterclaim would continue.

[¶6.]        In May 2011, Highmark moved for summary judgment on Hunter's counterclaim. After a hearing, the circuit court granted the motion. Hunter appeals.

## STANDARD OF REVIEW

[¶7.] "Summary judgment is examined de novo: we give no deference to [the court's] ruling." *Adrian v. Vonk*, 2011 S.D. 84, ¶ 8, 807 N.W.2d 119, 122. "Summary judgment in a negligence case is appropriate when the trial judge resolves the duty question in the defendant's favor." *Hendrix v. Schulte*, 2007 S.D. 73, ¶ 8, 736 N.W.2d 845, 847.

## ANALYSIS

[¶8.] The National Flood Insurance Act of 1968 (NFIA), 42 U.S.C. §§ 4001-4129, established the National Flood Insurance Program (NFIP). Congress enacted the FDPA in 1973, amending the NFIA to require flood insurance for loans secured by improved real estate located within a designated special flood hazard area. 42 U.S.C. § 4012a(b).[1] Lending institutions must notify a borrower of the flood insurance requirement; if the borrower fails to obtain flood insurance, the lender must do so at the borrower's expense. 42 U.S.C. § 4012a(e).

---

1.      42 U.S.C. § 4012a(b)(1), provides in relevant part:

> Each Federal entity for lending regulation . . . shall by regulation direct regulated lending institutions not to make . . . any loan secured by improved real estate . . . located or to be located in an area that has been identified by the Director as an area having special flood hazards and in which flood insurance has been made available under the National Flood Insurance Act of 1968, unless the building or mobile home and any personal property securing such loan is covered for the term of the loan by flood insurance in an amount at least equal to the outstanding principal balance of the loan . . . .

[¶9.] Hunter's counterclaim is based on negligence. "In order to prevail in a suit based on negligence, a plaintiff must prove duty, breach of that duty, proximate and factual causation, and actual injury." *Hendrix*, 2007 S.D. 73, ¶ 7, 736 N.W.2d at 847 (quoting *Fisher Sand & Gravel Co. v. S.D. Dep't of Transp.*, 1997 S.D. 8, ¶ 12, 558 N.W.2d 864, 867). "A duty can be created by statute or common law." *Id.* (quoting *Kuehl v. Horner Lumber Co.*, 2004 S.D. 48, ¶ 11, 678 N.W.2d 809, 812). Hunter asserts that Highmark had a statutory duty to make sure there was flood insurance on the property; if there was none, Highmark had a duty to purchase flood insurance at Hunter's expense. "As a general rule, the existence of a duty is to be determined by the court." *Id.* ¶ 8 (quoting *Erickson v. Lavielle,* 368 N.W.2d 624, 627 (S.D. 1985)).

[¶10.] We have previously examined whether a state statute establishes a duty in a negligence action. *Albers v. Ottenbacher*, 79 S.D. 637, 116 N.W.2d 529 (1962). In *Albers*, the plaintiff's vehicle was struck by the defendant's vehicle after his brakes failed. *Id.* We determined that "when the driver . . . violates the specific regulations as to brakes . . . he is guilty of negligence as a matter of law unless it appears that compliance was excusable . . . ." *Id.* at 643, 116 N.W.2d at 532.

> Negligence is the breach of a legal duty. It is immaterial whether the duty is one imposed by the rule of the common law requiring the exercise of ordinary care or skill not to injure another, or *is imposed by a statute designed for the benefit of a class of persons which includes the one claiming to have been injured as the result of nonperformance of the statutory duty.* The measure of legal duty in the one case is to be determined upon common law principles, while in the other the statute fixes a standard by which the fact of negligence may be determined. With reference to the adoption of the requirements of a legislative enactment or regulation as a standard of conduct in

> determining liability for negligence, we have said: "The violation of a statute or ordinance, designed for the benefit of individuals, is of itself sufficient to prove such a breach of duty as will sustain an action for negligence brought by a person within the protected class if other elements of negligence concur. The statute or ordinance becomes the standard of care or the rule of the ordinarily careful and prudent person."

*Id.* at 531 (emphasis added) (citations omitted).

[¶11.] *Albers* involved state statutes. In *Hofbauer v. Northwestern National Bank of Rochester*, 700 F.2d 1197, 1201 (8th Cir. 1983), the Eighth Circuit Court of Appeals held that it was for states to determine whether state common law adopted as a "standard of conduct for negligence purposes the duties established by the NFIA." Whether federal statutes establish a standard of care, i.e. duty, in state-based claims is a matter of state law. *Id.*; *see also Mid-America Nat'l Bank of Chicago v. First Sav. & Loan Ass'n of South Holland*, 161 Ill. App. 3d 531, 535, 515 N.E.2d 176, 179 (Ill. App. Ct. 1987) ("The question of whether or not a Federal statute establishes the appropriate standard of conduct for a state common law cause of action is a matter of state law.").

[¶12.] Hunter argues that her claim is not based on violations of the NFIA but simply on common-law negligence. However, she agrees that the duty arises from the NFIA. The NFIA requires lenders to inform borrowers when flood insurance is necessary and purchase the insurance if the borrower does not. "Therefore, any duty [Highmark] owed to [Hunter] would have arisen from the [NFIA], a breach of which would violate the [NFIA]. For this reason, [Hunter's] claims are based directly on alleged violations of the [NFIA]." *Ford v. First Am. Flood Data Servs., Inc.*, 2006 WL 2921432 at *5 (M.D. N.C. Oct. 11, 2006).

[¶13.] Other states have determined that the NFIA does not establish a duty. *R.B.J. Apartments, Inc. v. Gate City Sav. & Loan Ass'n*, 315 N.W.2d 284, 290 (N.D. 1982); *Pippin v. Burkhalter*, 279 S.E.2d 603, 604 (S.C. 1981); *Mid-America Nat'l Bank of Chicago*, 161 Ill. App. 3d at 537, 515 N.E.2d at 180. To reach such a conclusion, those courts have generally relied on congressional intent and the analysis of federal courts that the NFIA does not create an implied private cause of action.

[¶14.] When passing the NFIA, Congress found that:

> (1) from time to time flood disasters have created personal hardships and economic distress which have required unforeseen disaster relief measures and have placed an increasing burden on the Nation's resources; (2) despite the installation of preventive and protective works and the adoption of other public programs designed to reduce losses caused by flood damage, these methods have not been sufficient to protect adequately against growing exposure to future flood losses; (3) as a matter of national policy, a reasonable method of sharing the risk of flood losses is through a program of flood insurance which can complement and encourage preventive and protective measures; and (4) if such a program is initiated and carried out gradually, it can be expanded as knowledge is gained and experience is appraised, thus eventually making flood insurance coverage available on reasonable terms and conditions to persons who have need for such protection.

42 U.S.C. § 4001(a).

[¶15.] Based on congressional findings, courts have consistently held that in adopting the NFIA, Congress meant to protect lenders and the federal treasury. *See Wentwood Woodside I, LP v. GMAC Commercial Mortg. Corp.*, 419 F.3d 310, 323 (5th Cir. 2005); *Mid-America Nat'l Bank of Chicago v. First Sav. & Loan Ass'n of South Holland*, 737 F.2d 638, 642 (7th Cir. 1984) *cert. denied*, 469 U.S. 1160, 105

S. Ct. 911, 83 L. Ed. 2d 924 (1984); *Hofbauer*, 700 F.2d at 1201; *Arvai v. First Fed. Sav. & Loan Ass'n*, 698 F.2d 683, 684 (4th Cir. 1983); *Till v. Unifirst Fed. Savings & Loan Ass'n*, 653 F.2d 152, 159-61 (5th Cir. 1981). "Although Congress intended to help borrowers damaged by flooding, 'the principal purpose in enacting the NFIP was to reduce, by implementation of adequate land use controls and flood insurance, the massive burden on the federal fisc of the ever increasing federal flood disaster assistance.'" *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 252 (5th Cir. 2008) (quoting *Till*, 653 F.2d at 159). "Section 4012a(b) requires flood insurance for the amount of the outstanding loan balance and not for the equity of the borrower. If Congress had passed the statute primarily for the benefit of borrowers, it would have required that they insure their equity in the home." *Hofbauer*, 700 F.2d at 1200. "The fact that borrowers may suffer 'special injury' by violation of these statutes, however, does not necessarily make them members of a class for whose especial benefit the statute was enacted." *R.B.J. Apartments*, 315 N.W.2d at 288.

[¶16.]     The next reason that the NFIA does not establish a duty in a negligence case is that the NFIA does not create a private right of action. A private right of action essentially indicates the right of an individual to bring an action to enforce particular regulations or statutes. *See Alexander v. Sandoval*, 532 U.S. 275, 285-86, 121 S. Ct. 1511, 1519, 149 L. Ed. 2d 517 (2001). "[P]rivate rights of action to enforce federal law must be created by Congress." *Id.* Accordingly, statutory intent to create a private remedy is determinative. *Id.* Federal courts have consistently

determined that the NFIA does not create a private right of action for borrowers.[2]
*Wright v. Allstate Ins. Co.*, 500 F.3d 390, 398 (5th Cir. 2007) (concluding that the
NFIA did not expressly or implicitly authorize a private federal common law cause
of action for fraud or negligent misrepresentation); *Hofbauer*, 700 F.2d at 1201;
*Mid-America Nat'l Bank of Chicago*, 737 F.2d at 640; *Arvai*, 698 F.2d at 684. If the
NFIA does not create a private right of action, then it follows that an individual
cannot use the NFIA to establish a duty in an individual civil claim.

[¶17.]    After concluding that Congress did not intend a private cause of action
to arise from the NFIA, the North Dakota Supreme Court also concluded that a
common-law right of action for the violation of the statute was not intended. "The
separation-of-powers doctrine and principles of federalism militate against the
adoption of the federal statute as the standard of care in a state negligence action
when no private cause of action, either explicit or implicit, exists in the federal
statute." *R.B.J. Apartments*, 315 N.W.2d at 290.

[¶18.]    Hunter relies primarily on *Small v. South Norwalk Savings Bank*, 535
A.2d 1292 (Conn. 1988). In *Small*, the plaintiff purchased a house located in a
special flood hazard area. The defendant bank failed to advise her of this and her
house was damaged by flooding. The jury returned a verdict for the plaintiff on her

---

2.    In addition to examining whether Congress intended for borrowers to be the
protected class of the NFIA, federal courts also examined the enforcement of
the NFIA. "The existence of an administrative enforcement mechanism
suggests that no other remedy was intended." *Hofbauer*, 700 F.2d at 1201
(citing *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 20, 100 S.
Ct. 242, 247, 62 L. Ed. 2d 146 (1979)).

negligence claim. Because defendant's objections were untimely, appellate review was for plain error. Defendant argued on appeal that because the alleged duty was statutory, "the only legitimate inquiry is whether the federal legislation expressly or impliedly creates a right of action under either federal or state law." *Id.* at 1296. The Connecticut Supreme Court noted:

> Where a statute is designed to protect persons against injury, one who has, as a result of its violation, suffered such an injury as the statute was intended to guard against has a good ground of recovery. . . . Statutory negligence is actionable upon satisfaction of two conditions: (1) the plaintiff must be a member of the class protected by the statute; and (2) the injury must be of the type the statute was intended to prevent.

*Id.* at 1296-97.

[¶19.] *Small* is distinguishable from this case. First, the Connecticut Supreme Court reviewed for plain error. *Id.* While other cases analyzed whether borrowers are members of the class meant to be protected by the statutes, the court in *Small* did not engage in such analysis. *Id.* Finally, the suit in *Small* was based on a plaintiff who had not been informed that the house was in a designated flood hazard area. *Id.* at 1293. In the present case, Hunter signed the Standard Flood Hazard Determination that explicitly provided that she needed flood insurance.

## CONCLUSION

[¶20.] Hunter's negligence claim fails as a matter of law because she cannot show that Highmark owed her a duty. Accordingly, summary judgment was appropriate. *See Hendrix*, 2007 S.D. 73, ¶ 8, 736 N.W.2d at 847. We need not, therefore, examine whether material facts were in dispute. We affirm.

[¶21.] KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.